# Wytheville.

BRITTON & KENNEDY, INC., W. D. HILL AND D. T. KENNEDY
V. E. M. TERRY.

June 16, 1921.

1. REAL ESTATE BROKERS—*Partnership—Right to Commissions—
Case at Bar.*—K. H. and T. formed a partnership for the hand-
ling and sale of a certain tract of land of which K., under a
contract with J., had the exclusive right of sale upon commis-
sion. The partnership offered the land at auction sale and
T., who had in the meantime obtained a legal title, bought it
in for the partnership under an agreement with his partners
that if the partnership failed to dispose of the land at a satis-
factory price within two years, the partnership should be
abandoned and the title to the land remain in T. The partner-
ship agreement contained a provision that no one of the part-
ners should charge the partnership for his services in the sale
of the property. It appeared that K. was entitled to commis-
sions of $1,690.74 as against J. upon the purchase price ob-
tained at the auction sale. K. and H. claimed on the abandon-
ment of the partnership at the expiration of the two years
one-third each of this $1,690.74 as against T.

   *Held:* That the partnership contract in substance provided that
   neither K. nor H. would be entitled to claim any commissions
   against T., unless the partnership should resell the land at
   a price in excess of the price at which it was bought in by T.
   It was in the partnership profits alone that K. and H. had
   any interest.

2. CONTRACTS—*Cancellation of Contracts—Consideration.*—Where a
contract is cancelled by mutual consent and agreement of both
parties by an executed agreement, the cancellation avoids and
puts an end to the contract, and no other consideration is re-
quired to support the cancellation.

3. APPEAL AND ERROR—*Presumption in Favor of Decision of Lower
Court—Credence Given to Testimony.*—Where upon the ques-
tion of whether the cancellation of a contract was conditional
or unconditional the testimony is directly in conflict, and it
appears from the decree that the court below gave full credence

to the testimony on one side and no credence to the testimony on the other, and there is nothing in the record from which the appellate court can say that the court below erred in so doing, the action of the court below is conclusive.

4. APPEAL AND ERROR—*Presumption in Favor of Decision of Lower Court.*—On every appeal the action of the court below carries with it the presumption of correctness until the contrary is made to appear.

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for complainant. Defendants appeal.

*Affirmed.*

The appellee, E. M. Terry, instituted this suit in equity in the court below to remove an alleged cloud upon his title to a certain large tract of land known as "Beech Forest."

The Beech Forest tract of land was conveyed to the appellee, Terry, by deed from one Irvin Bain and wife, of date January 7, 1914, "subject to a certain contract of sale made to Joe W. Jirasek, dated June 9, 1913," and the appellee, as such grantee, agreed "to assume and comply with the terms of said contract."

By the contract just mentioned Jirasek purchased from Bain the Beech Forest tract of land for a certain consideration, only $18,700.00 of which is material to the case before us, which by the provisions of such contract was to be paid as follows: $1,700.00 "to be paid in cash, or, at said Jirasek's option, within ten years, with interest at five per cent. until paid, by said Jirasek to the said Bain, and the balance, to-wit, * * * $17,000.000 * * to be paid on the 19th day of June, 1923, carrying interest at 5 per cent. from the 19th day of June, 1913, payable annually, with the following provisions, however: (a) That the first year's interest, * * * due on the 19th day of June, 1914, may be extended for one year at the request of the said Jirasek * * and be payable * * on the 19th day of June, 1915, if so ex-

tended," with certain other provisions which are immaterial, except perhaps it should be mentioned that among such provisions was one by the terms of which Bain agreed "as soon as the cash payment of  *  *  $1,700.00  *  * is made, to execute and deliver a proper deed conveying the said tract of land to Jirasek." This contract was never recorded.

However, there was a contract in writing, of date of March 10, 1914, between Jirasek and D. T. Kennedy, one of appellants, which was duly recorded on June 26, 1914. Omitting the caption, this agreement is as follows:

"That for and in consideration of the sum of one ($1.00) dollar cash in hand paid by the parties to this agreement, each to the other, and the further consideration of the conditions hereinafter imposed and the sum of three hundred and fifty ($350.00), to be loaned J. W. Jirasek, as hereinafter provided, the said parties to this agreement agree as follows:

"The said D. T. Kennedy to be the sole selling agent for a tract of land known as the Beech Forest tract, containing 1,667 3/8 acres, which said land was purchased by the said J. W. Jirasek from Irvin Bain and the said D. T. Kennedy, to receive as his commission ten (10%) per cent of the selling price of the said land. The said D. T. Kennedy agrees to loan the said J. W. Jirasek, three hundred and fifty ($350.00), which said loan is to be paid back out of the first money coming to the said J. W. Jirasek, from the sale of the said Beech Forest property, surveyed and subdivided, as he thinks best and the money advanced by him for this purpose shall be deducted as an expense and shall be paid the said D. T. Kennedy out of the price for which the said land shall be sold. The said D. T. Kennedy shall apply the money received by him for the land covered under this agreement as follows: First of all towards paying off the amount of the mortgage on the property covered under

this agreement, which amount is eighteen thousand seven hundred dollars ($18,700.00), then pay the cost of surveying and dividing the property, as hereinbefore mentioned, and the commission of ten (10%) per cent, after paying the amount against the property, the balance of the money which the land shall bring shall be paid to the said J. W. Jirasek, up to fifteen ($15.00) dollars per acre, including the amount paid to the holder of the mortgage, in order to satisfy same, and the residue, if any, after paying the said fifteen ($15.00) dollars to J. W. Jirasek including the amount paid to the holder of the mortgage; the expenses of surveying and the commission to the said D. T. Kennedy, the said residue shall be divided equally between the said D. T. Kennedy, his heirs or assigns, and the said J. W. Jirasek, his heirs or assigns. The life of this agreement to be until the property covered under same is sold, but not for a greater period than ten years from date thereof. In testimony of their acceptance of the terms of this agreement, the parties to same shall hereto affix their signatures and seals.

(Signed)    "JOS. W. JIRASEK  (SEAL)
D. T. KENNEDY (SEAL)"

Jirasek personally never made the cash payment of $1,700.00, or any part of the residue of said $18,700.00 of purchase money, or any interest thereon, but allowed the land to be sold under the agreement aforesaid, at the time and with the result presently to be more particularly mentioned, at which sale the appellee, Terry, was then (and all the time since has been), treated and considered by Kennedy, Hill and himself as the absolute purchaser and owner of the greater part of the land, in so far as Jirasek was or is concerned, so that according to the positions taken by Terry, Kennedy and Hill, Jirasek never became entitled to any conveyance of the land under his contract of purchase aforesaid.

The cloud upon the title of the appellee, Terry, to the land, which the bill seeks to have removed, consists of (1) the said provision in the deed from Bain to Terry with respect to the said contract of sale between Bain and Jirasek; (2) the said contract between Bain and Jirasek; and (3) the said contract between Jirasek and Kennedy. The bill takes the position that the rights of the parties under these three instruments all depend upon the interests acquired by them under the contract between Bain and Jirasek, and the bill alleges that the appellee, Terry, has fully performed all the obligations resting upon him under the last named contract and that he is therefore the owner of the land purchased by him as aforesaid free and discharged of all claims upon or against the land by reason of the provisions of such contract and of the deed to him from Bain aforesaid, and seeks to have the said alleged cloud upon said title removed.

The Beech Forest tract of land was surveyed and subdivided and afterwards offered for sale at public auction, on December 14 and 15, 1914, by the appellee, Terry, and the appellants Kennedy and Hill, as co-partners under certain instruments and agreements in writing between them now to be mentioned, namely:

On March 21, 1914, Kennedy, one of appellants, assigned in writing to Terry, the appellee, and to Hill, one of appellants, one-third interest each in the agreement aforesaid between Jirasek and Kennedy of date March 10, 1914.

By a contract in writing, of date March 21, 1914, between Terry, as party of the first part, and Kenndy, Hill and Terry, as "co-partners" and parties of the second part, it was recited that Kennedy, under his contract aforesaid with Jirasek, held the exclusive control and right to sell the Beech Forest tract of land; that Kennedy had advanced to Jirasek $350.00 as evidenced by the note of the latter of March 14, 1914, due on demand; that Kennedy had assigned to Terry and Hill one third interest each in said

Jirasek-Kennedy agreement; and it was agreed that the three parties "hereby enter into a co-partnership in the said contract" (meaning the Jirasek-Kennedy contract aforesaid), for the sale and handling of the Beech Forest tract of land. This partnership contract continues, so far as material, as follows: "Whereas it becomes necessary to cut up and sub-divide, survey, run roads and improve the property in order to sell the same to advantage, we, the said parties to this contract have this day made our joint note for $1,000.00 to cover any and all expenses in the sale and handling of the said property * * * And whereas the said E. M. Terry owns a contract of sale signed by Joe W. Jirasek and Irvin Bain, dated the 9th day of June, 1913, which said contract has been duly assigned by Irvin Bain to E. M. Terry. Now in the sale of the said property it is mutually understood and agreed that any and all money due under said contract, principal and interest (the same being a lien on the property), shall first be paid the said E. M. Terry, the same being a prior lien, but the said Terry on his part doth hereby agree that in the sale of the said property to change the terms of his contract as to time and allow the property to be sold upon the terms of one-fourth cash, the balance in one, two, three and four years, the deferred payments to carry six per cent interest from date of sale. And it is understood and agreed between the parties to this contract that we are to share and share alike in any and all conditions or profits that may arise from the sale of the said property, and from all sales shall be first paid the indebtedness of the note of $1,000.00 above mentioned, which is understood to be for expenses, and a payment to Jirasek on the contract herein named and referred to, and after said expenses, liens and encumbrances have been paid, the balance in cash, notes or bonds shall be divided into three equal parts between the parties to this contract. * * *

"It is further understood and agreed between the co-partners that while we share and share alike in all profits and losses, but no one partner shall charge any commissions or salary for his services in the sale of the property, either public or private, but of course any actual expenses that may be incurred by either partner in traveling backwards and forwards shall be charged to the concern and any actual expenses that may be incurred by either partner in the sale or sales of the property.

"And it is further understood and agreed by the co-partners to this contract that each one of us shall use our best efforts in trying to sell and dispose of the said property to the best advantage possible and at the earliest date."

There was another contract in writing, between the said co-partners of date March 21, 1914, which provided that another tract of land owned by Terry, known as the Grey-Tuggle and Davis tract of land, would be also sold by the said partnership according to the same provisions, terms and conditions as are set forth in the next above mentioned partnership agreement with respect to the Beech Forest tract of land.

Subsequently the said co-partners entered into yet another contract in writing, which bears date October 6, 1914, which recites the existence of the two partnership contracts next above named, which together concern both the Beech Forest and the Grey-Tuggle and Davis tracts of land, and then provides as follows:

"And whereas we, the parties to the said contracts, have decided to have an auction sale and sell the property at public auction some time during the month of December, 1914, in order to carry out the idea and intent of said two contracts dated March 21, 1914.

"And whereas it may become necessary for the three of us to purchase a part of the said land or tracts named in the contracts in order to protect our several interests, now,

therefore, whereas the said E. M. Terry now holds title to the said several tracts of land mentioned in the contracts of March 21, 1914, and whereas it may become necessary to purchase some part, tract or parcel of the said land at the sale above referred to, it is understood and agreed between the parties to this agreement that the same shall be purchased by the partnership or firm or their representatives, but that the title shall remain in the said E. M. Terry until he shall have received any and all of his money, both principal and interest at six per cent per annum on part purchased, and that such title shall remain in him until the property is sold and disposed of at a satisfactory price to all of the partners, but that in any event the same must be sold and closed up and the partnership settled within two (2) years from the date of this contract."

The Beech Forest tract, on the survey made of it preparatory to the contemplated sale of it under the above mentioned contract, was found to contain 1,658.25 acres, exclusive of certain parcels of the land which had been sold by the partnership by private sales prior to the auction sale now to be mentioned, from which private sales $325.00 was received as cash payments, designated in the record as "Cash from Smith $325.00."

At the offering for sale at public auction aforesaid, on December 14, 1914, 368.6 acres of the Beech Forest tract were cried out as sold to various bidders at the aggregate price of $7,590.55. These bidders, however, either did not comply with the terms of sale or those who complied had their money returned to them and had their bids cancelled by mutual agreement of all parties concerned. On the next day, December 15, 1914, the residue of the land, consisting of 1,289.65 acres, was offered for sale at public auction in pursuance of said partnership contracts and was bid in by Terry at the price of $12.00 per acre, aggregating the price of $15,475.80. Terry signed a memorandum in writing of

the last named sale of the 1,289.65 acres of land to him at the auction sale just mentioned. The appellant Hill, was the auctioneer and also signed this memorandum as a witness. Terry, in his deposition in the cause, claims that, as per a verbal understanding between himself and Kennedy and Hill made at the time, upon the failure of the aforesaid bidders for the 368.6 acres to comply with the terms of sale, he, Terry, on December 15, "just bought that over with the other, making a complete sale of it," so that Terry, thus became, on December 15, 1914, "the purchaser of all of the Beech Forest tract" (except the small parcels sold prior to the auction as aforesaid) "at the price obtained at the auction sale" as aforesaid. The other testimony in the cause is not conflicting to any material extent on this point.

There was therefore no actual sale made of any part of the Beech Forest tract of land on December 14th and 15th, in so far as the partnership aforesaid was concerned; but, by the consent of Kennedy, acting under the contract between himself and Jirasek aforesaid and by the consent of Terry and Hill, the prices at which the land was cried out as sold at such public offering was treated by all three of the co-partners aforesaid as the selling price at which the land had been sold to satisfy, first, the purchase money due Terry from Jirasek, next, the cost of surveying, sub-dividing the property, etc., and next, the ten per cent commissions on such sale due Kennedy from Jirasek, all as provided for in the contract aforesaid between Jirasek and Kennedy and also as provided in the partnership contracts aforesaid. The cost of surveying, sub-dividing the property, etc., aggregating $922.00, and the $350.00 paid by Kennedy to Jirasek were paid in part by the cash payments of purchase money from the aforesaid of $325.00 and the residue by Terry.

Accordingly Kennedy, the next day after the auction sale offering on December 15th aforesaid, to-wit, on December

16, 1914, made out the following statement as showing the result thereof in so far as it affected Jirasek and Terry in their relationship to each other as vendee and vendor of the Beech Forest tract of land:

"Exhibit 'D-T-K-C.' filed with the deposition of D. T. Kennedy.

"Statement of Receipts and Disbursements for J. W. Jirasek.

"Receipts

| | |
|---|---:|
| Sold 368.6 acres of land for | $ 7,590.55 |
| Sold 1,289.65 acres of land at $12.50 per acre | 15,475.80 |
| Total | $23,066.35 |

"Disbursements

| | |
|---|---:|
| Paid E. M. Terry, principal | $18,700.00 |
| Paid E. M. Terry, interest for 18 months | 1,402.50 |
| D. T. Kennedy, for clearing up and surveying | 922.11 |
| Paid D. T. Kennedy, not for J. W. Jirasek | 350.00 |
| Paid D. T. Kennedy, commission on $23,066.35 at 10% | 2,306.63 |
| Total | $23,681.24 |

"Resume

| | |
|---|---:|
| "Total disbursements | $23,681.24 |
| "Receipts | 23,066.35 |
| "Loss | $ 615.89 |

"Therefore, the commission actually received by D. T. Kennedy is $2,306.63 less $615.89, leaving $1,690.74."

Following December 15, 1914, and up to October 6, 1916, (the latter date marking the expiration of the two year

period within which the land bought in by Terry as aforesaid was required by said partnership contract of October 6, 1914, to be resold at a satisfactory price to all the partners and the partnership was required to be settled), all three of the partners regarded such land as having been bought in by Terry and the title thereto in Terry as held by him for the benefit of the partnership to the extent of allowing the partnership the opportunity to resell such land at any time during such period at any price satisfactory to all the partners over and above $21,827.50, the price at which Terry had bought it in as aforesaid, together with six per cent interest thereon from December 9, 1914, up to such resale. And all three of the partners during such period made and exhausted every effort in their power to make such resale, without succeeding in reselling such property, at such advanced price.

The record is not explicit on the subject, but it would seem from what appears therein that between December 15, 1914, and June 3, 1919, certain parcels of said 1,658.25 acres of land, bought in by Terry on the former date as aforesaid, were sold off, presumably by the partnership. These parcels of land should have aggregated 72.95 acres, as it would seem from the record, but such aggregate is stated in the record as 67.6 acres. However it is expressly stated in the record that after such sales were made there were left in the hands of Terry and unsold 1,585.3 acres of the land bought in by him on December 15, 1914 as aforesaid. It does not appear from the record what said 72.95 or 67.6 acres of land sold for; but no claim is made in the record that any profit accrued to the aforesaid partnership because of such sales.

Of the evidence bearing on the subject, it is deemed sufficient to remark that, to say the least, the preponderance of the evidence clearly establishes the fact that on and after October 6, 1916, both Kennedy and Hill abandoned the en-

terprise of attempting to resell the 1,585.3 acres of the unsold land held by Terry as aforesaid, or any part of it, under said partnership contracts; that Terry after October 6, 1916, and also Kennedy and Hill, treated the partnership as at an end.

Thus the matter stood on and after October 6, 1916.

In December, 1917, Terry made an unsuccessful effort to sell the said 1585.3 acres of land, as individual and absolute owner of it in fee. This effort was made through Hill, by the employment of Hill as real estate agent by Terry to make the sale for Terry's sole benefit. Kennedy was fully informed at the time of this action on the part of Terry and was present at the offering of the land at that time and made no protest. Kennedy, however, does state in his deposition in the cause, that he intended to protest if there had been any bidders at such offering and did not protest for the reason that there were no bidders.

In April, 1919, Terry entered into a contract with Hill, as real estate agent, to sell the 1,585.3 acres of land on June 3, 1919, at public auction, as the property of Terry as individual and sole owner. Accordingly the property was offered for sale at public auction on June 3, 1919, by Hill, as agent for Terry. Kennedy knew all this at the time and was present at this sale and made no protest or assertion of any interest in or claim against the property under the Jirasek-Kennedy contract or under said partnership contracts or otherwise; and at such sale Britton and Kennedy, Incorporated, acting by and through Kennedy as its secretary-treasurer and general manager, became the purchaser of said 1,585.3 acres of land at the price of $19,816.25, upon the terms and conditions, of which the following only need be mentioned, namely: $100.00 to be paid cash; $4,854.06 to be evidenced by six notes, of even date with the contract of sale, bearing 6% interest from date for the amounts and payable as follows: One note for $400.00 due 30 days after

date; one for $500.00 due 45 days after date; one for $1,000.00 due 75 days after date; one for $1,000.00 due 105 days after date; one for $1,000.00 due 135 days after date; and one for $954.06 due 165 days after date; upon payment of all of the aforementioned cash and notes deed was to be made to the purchaser by Terry and simultaneously the purchaser was to execute its note for $14,862.19, due on or before two years after date of the contract of sale, bearing six per cent interest from such date, payable semi-annually, and to secure such note by deed of trust on the property sold.

There was a contract of sale in writing entered into between Terry and Britton & Kennedy, Incorporated, dated January 3, 1919, which embodied the said terms and conditions of sale. Britton & Kennedy, Inc., gave their check for the $100 cash payment. The check was not paid on presentation at the bank but after some delay that amount was paid to Terry by such purchaser. Such purchaser executed the six purchase money notes first above mentioned, but never paid but one of them and was in default upon that before it was paid, it being paid on August 12, 1919, after repeated unsuccessful efforts of Terry to obtain payment of it and of the other notes aforesaid then past due.

The contract of sale just mentioned was executed in duplicate, being typewritten, Terry retaining the original and Britton & Kennedy, Inc., taking the carbon copy. Neither copy was acknowledged for record and neither was ever recorded.

Following August 12, 1919, Terry continued to press Britton & Kennedy, Inc., for payments due on their contract of purchase aforesaid, without succeeding in obtaining any further payment whatever. On September 18th the three notes aforesaid, for $500.00 due July 18th, $1,000.00 due August 18th and $1,000.00 due on September 18th, were unpaid, aggregating $2,500.00 in arrears of payments under the contract of purchase by Britton & Kennedy, Inc. On

that day Kennedy, acting for Britton & Kennedy, Inc., had a personal interview with Terry in which Terry told Kennedy that he was going to bring suit unless the notes aforesaid, which were due and past due, were settled. Thereupon, Kennedy, according to Terry's testimony, stated to Terry that "it was useless to bring a suit, as they were so heavily involved that I" (Terry) "could not make anything and that not being able to pay he would cancel the contract without any further consideration." According to the testimony of Terry, it was thereupon mutually understood and agreed between Terry and Kennedy, the latter acting for Britton & Kennedy, Inc., that the contract mentioned stood cancelled as of September 18, 1919, and Kennedy on returning home wrote upon the face of the copy of the contract held by Britton & Kennedy, Inc., "Cancelled by mutual consent and agreement, September 18, 1919," and signed "Britton & Kennedy, Inc., by D. T. Kennedy;" and in a letter to Terry, dated September 22, 1919, inclosing such copy to Terry, Kennedy stated, "I herewith inclose the old contract which I have marked 'Cancelled by mutual consent and agreement'." A few days, perhaps a week, after the receipt of such letter and copy of contract thus marked cancelled, Terry wrote across the face of his copy of such contract, "Cancelled by mutual consent and agreement, September 18, 1919," and signed his name, "E. M. Terry." Either at that time, or subsequently, on what precise date is not shown by the evidence, Terry wrote across the face of the said then past due notes aggregating $2,-500.00 and also across the face of all of the residue of the notes executed by Britton & Kennedy, Inc., as aforesaid "Cancelled September 18, 1910," and signed his name, "E. M. Terry."

There is no evidence in the case controverting the fact that the contract of June 3, 1919, aforesaid, was, as of September 18, 1919, actually cancelled by both Britton & Kennedy, Inc., and Terry; and Kennedy, in his testimony

in the cause, admits that Britton & Kennedy, Inc., were then unable to make the past due payments as required by the contract, and that the purpose of Terry at that time was to bring suit "in order to be relieved of the contract of June 3rd." There is a sharp conflict in the testimony in the cause, however, upon the subject of whether the cancellation of the contract just mentioned was unconditional or conditional. Terry's testimony is to the effect that such cancellation was absolutely unconditional. Kennedy's testimony is to the effect that the cancellation on his part, acting for Kennedy & Britton, Inc., was induced by the agreement on the part of Terry at the time (September 18, 1919), to enter into a certain agreement in writing with the Virso Investment Corporation (towards which Kennedy sustained the same relationship that he did towards Britton & Kennedy, Inc.), by which agreement the property was to be sold to the Virso Investment Corporation at a certain price and upon certain terms which need not be set forth here. There are also letters and exhibits and the testimony of Hill appearing in evidence, bearing upon this issue of fact, which cannot be here set forth without too greatly extending this statement. It is sufficient here to say that Terry refused to execute the agreement with the Virso Investment Corporation, which Kennedy testifies Terry had agreed to execute as aforesaid.

By their pleadings in the cause Kennedy and Hill, by way of defense to the bill, claim that Terry owes, or should account to them for their one-third each of the commissions, aggregating $1,690.74 mentioned in the exhibit "D. T. K. C." copied above, to which commissions they claim to be entitled under the Jirasek-Kennedy contract, the assignment aforesaid by Kennedy of an interest therein to Hill, and the partnership contracts aforesaid; and Britton & Kennedy, Inc., as well as Kennedy and Hill, by their pleadings in the cause, by way of affirmative relief, seek to have

the court require of Terry the specific performance of the cancelled contract of sale of June 3, 1919, aforesaid, between Terry and Britton & Kennedy, Inc., on the ground that such contract was cancelled by Britton & Kennedy, Inc., upon the condition claimed in Kennedy's testimony, which condition has not been performed by Terry and which he has refused to perform.

The decree under review decided that, (1) neither Kennedy nor Hill have any valid and subsisting claim against Terry under the contracts aforesaid prior in date to June 3, 1919, and (2) also refused to grant the relief of specific performance of the contract of sale of June 3, 1919, aforesaid. On these subjects the decree, so far as material to be set forth here, is as follows:

(1) "And the court being further of opinion that neither the said D. T. Kennedy" (nor) "W. D. Hill have any valid and subsisting claim against the said E. M. Terry, under said contract between the said J. W. Jirasek and D. T. Kennedy, bearing date the 10th day of March, 1914, and the assignment thereof by the said D. T. Kennedy of one-third interest therein to W. D. Hill, * * or upon the said tract of land so purchased by him, as set forth in their said cross-bills, respectively, doth so decide, the court being further of opinion that, in addition to the other evidence in this cause, which is conclusive against said alleged claims, that the said W. D. Hill having entered into contracts with the complainant as the owner of said land for the sale thereof by him, one of said contracts having been entered into in December, 1917, and the other on the 15th day of April, 1919, and the said D. T. Kennedy by his dealings with the said complainant, as the owner of said land, and especially by the said contract between Britton & Kennedy, Inc., and the complainant, bearing date on the 3rd day of June, 1919, by which he acknowledged the complainant to be the

owner of said land, are estopped to deny the title of the complainant to said land."

(2) "And the court being further of opinion that the contract for the sale of the said tract of 1,585.3 acres of land by the complainant, E. M. Terry, to Britton & Kennedy Inc., bearing date on the 3rd day of June, 1919, * * and as to which specific performance is asked * * in the several pleadings, was cancelled and surrendered by said Britton & Kennedy on the 18th day of September, 1919, and thereafter ceased to exist and that no other contract was then entered into between the said complainant and Britton & Kennedy, Inc., or the said D. T. Kennedy, as a consideration for the cancellation of the said contract, and no other contract was made between the complainant and the said Britton & Kennedy, Inc., or D. T. Kennedy for the sale of the said land, and that neither the said Britton & Kennedy, Inc., D. T. Kennedy, or W. D. Hill * * * are entitled to have specific performance of said alleged contract, there being no existing contract between the said parties, or either of them, for the sale of said land or in relation thereto, doth so decide and adjudge."

*Geo. E. Allen,* for the appellants.

*N. S. Turnbull, Jr.,* and *Jas. H. Guthrie,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The assignments of error present only two questions for our decision, which will be passed upon in their order as stated below.

The first question for our decision is as follows:

[1]    1. Did the court below err in refusing to allow the claims of the appellant, Kennedy and Hill against Terry, the appellee, of the alleged shares of Kennedy and Hill of one-third each of $1,690.74 commissions on the sale of land made to Terry on December 15, 1914, under the circum-

stances set forth in the statement preceding this opinion and which amount of commissions appears from the exhibit "D. T. K. C." copied in such statement?

This question must be answered in the negative.

It clearly appears from the evidence in the cause that the said $1,690.74 merely constituted commissions on the sale mentioned which Kennedy had earned as against Jirasek, under the contract between Kennedy and Jirasek, by making the sale under and as authorized by such contract. As between Terry, on the one part, and Kennedy and Hill upon the other part, it was in substance provided in the contracts of partnership between them that neither Kennedy nor Hill would be entitled to claim any commissions against Terry, or the land, unless and until the partnership should resell the land at a price in excess of the price at which it was bought in by Terry on December 15, 1914, to-wit, $21,827.50 with six per cent per annum interest thereon until paid to be added, which was owing to Terry, and also the expenses of such partnership resale, so as to make a partenership profit. It was in the partnership profits alone that Kennedy and Hill had any interest. The duration of the partnership was expressly limited to two years from October 6, 1914. But aside from that consideration, the partnership was in fact abandoned by both Kennedy and Hill on and after October 6, 1916. They never made any effort to resell the land for the benefit of the partnership after October 6, 1916. They thereafter left Terry with the 1,585.3 acres of the land on his hands, as between him and Jirasek, at the price at which Terry had bought it in on December 15, 1914, unassisted in any way by Kennedy and Hill, as members of the partnership, in making a resale of it so as to save Terry from loss on the account as between himself and Jirasek. Further, Terry was never able, at any time after October 6, 1916, even up to June 3, 1919, to sell the land so as to make any profit over and above the price at which he bought it in as

aforesaid. And the sale of June 3, 1919, of the 1,585.3 acres of the land was at a price of only $19,816.25, and that only on paper. It is not claimed that the sales of the residue of the land bought in by Terry on December 15, 1914, came anywhere near making up the price of $21,827.50, at which he bought the whole in, as aforesaid, with interest. So that although we may regard time in the limitation of the duration of the partnership as not of the essence of the partnership contract, yet, in no aspect of the case can it be said that Kennedy or Hill were ever entitled, as against Terry, to any commissions under the Jirasek-Kennedy contract and the partnership contracts aforesaid. We are, therefore, of the opinion that the decree under review was plainly right in its holding to the effect that the evidence in the cause, exclusive of that bearing upon the subject of estoppel, "is conclusive against said alleged claims" of commissions.

Such being our conclusion it is unnecessary for us to enter at all upon the consideration of the matter of estoppel upon which the court below rested its decision.

(2) Did the court below err in holding that the contract of sale between Terry and Britton & Kennedy, Inc., of date June, 3, 1919, was cancelled and surrendered by the latter on the 18th of September, 1919, and thereafter ceased to exist, and that no other contract was then entered into between Terry and Britton & Kennedy as a consideration for the cancellation of the said contract and no other contract was subsequently made between Terry and such parties or either of them for the sale of the land in question, and that neither Britton & Kennedy, Inc., nor Kennedy nor Hill are entitled to the specific performance of the contract of June 3, 1919?

This question must be answered in the negative.

[2-4] That the contract in question was in fact cancelled by mutual consent and agreement of both parties thereto admits of no doubt under the evidence in the cause. The can-

cellation being an executed agreement avoided and put an end to the contract (2 Min. Inst., 3rd ed., p. 749), and it required, as is well settled, no other consideration to support the cancellation. As to this there is no controversy before us. The only subject of controversy before us touching the validity and finality of the cancellation of the contract is over the question of whether or not the cancellation was unconditional, or was conditioned upon and in consideration of an agreement on the part of Terry to execute a subsequent contract. Upon this subject the testimony of Terry and Kennedy is directly in conflict, and whether the fact is that the cancellation aforesaid was unconditional or conditional depends upon whether credence is to be given to the testimony of Terry and Kennedy. The court below, as appears from the decree under review, gave full credence to the testimony of Terry, and did not give any credence to the testimony of Kennedy on this subject. We have found nothing in the record from which we can say that the court below erred in so doing. It is well settled that on every appeal the action of the court below carries with it the presumption of correctness until the contrary is made to appear. *Reynolds* v. *Adams*, 125 Va. 295, 99 S. E. 695. It follows, therefore, that the action of the court in the particular under consideration must be affirmed.

Much has been said in the argument before us, written and oral, on the subject of accord and satisfaction, and a great number of authorities have been cited by counsel on both sides of the cause as bearing upon the questions of law, whether, if there was on the part of Terry, on September 18, 1919, a verbal contract with Kennedy, acting for Britton & Kennedy, Inc., which amounted to a promise to enter into another contract in writing in lieu of the June 3, 1919, contract, which was the condition upon, or the consideration for which, the latter contract was cancelled, such

mere promise of itself constituted an accord and satisfaction of the last named contract, so as to render its aforesaid cancellation valid, or whether the refusal of Terry to perform such promise operated to nullify the cancellation of the June 3, 1919, contract. But, in view of the conclusion of fact reached by the court below on the subject, which we must approve, as aforesaid, there was no such promise made by Terry. Therefore, no such questions of law are presented for our decision. Hence, there is no occasion for us to deal here with the questions of law or with the authorities just referred to.

The decree under review will be affirmed.

*Affirmed.*